## Case No. 6,302.

### HEARN v. NEW ENGLAND MUT. MARINE INS. CO.

[4 Cliff. 200.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1872.[2]

MARINE INSURANCE—DEVIATION IN VOYAGE—EVIDENCE OF USAGE.

1. In reply to complainant's application for insurance, not to cost over four per cent, on a vessel carrying coal to Cuba, and return to Europe, the underwriters replied, "As requested, we have entered $5,000 on the charter of the barque Maria Henry, Liverpool to port in Cuba, and thence to port of advice and discharge in Europe, at four per cent," and did write such a policy in the same terms. Held, that these words did not authorize the insured to go to a second port in Cuba for a return cargo.

[See note at end of case.]

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]
[2] [Affirmed in 20 Wall. (87 U. S.) 488.]

2. Under the pleadings in this case, that evidence of a usage at Liverpool for vessels chartered at that port for a round voyage to Cuba and return to Europe, carrying outward coal, and bringing a return cargo; to visit two ports in Cuba, could not be admitted to affix such an interpretation to the policy.

[See note at end of case.]

This was a bill in equity [by George Hearn], to reform a policy of insurance. A prior action of assumpsit was brought on the policy, in which judgment was entered for the defendants. [Case No. 6,301.]

Walter Curtis and B. R. Curtis, for complainant.

H. C. Hutchins, for respondents.

CLIFFORD, Circuit Justice. Equity will reform a policy of insurance if it does not, when drawn and received, correctly express a previously concluded agreement for insurance, which it was designed by both parties should have been expressed in the instrument; but the power will only be exercised with great caution, and upon such proof as is entirely satisfactory. Application for insurance was made by the complainant to the respondents on the 7th of May, 1866, in which communication he stated, among other things, that the barque Maria Henry was chartered to go from Liverpool to Cuba, and load for Europe, via Falmouth for orders where to discharge, and requested the respondents to insure $5,000 on the charter, valued at $16,000, provided they would not charge over four per cent premium. In the same communication the complainant also stated, "I think the vessel sailed from Liverpool, April 22, for Cuba, with her registered tonnage of coal on board." Whatever prior contract was made between the parties was consummated by the respondents in their reply to the communication from the complainant, which bears date two days later than the communication from the complainant, in which they say, "Your favor of the 7th is at hand, and, as requested, we have entered $5,000 on the charter of barque Maria Henry, Liverpool to port in Cuba, and thence to port of advice and discharge in Europe, at four per cent." What they represented that they had done they did, in fact, do, as appears by the words of the policy, which are, "$5,000 on charter of the barque Maria Henry, at and from Liverpool to a port in Cuba, and at and thence to port of advice and discharge in Europe." They stated not only that they had done as requested, but they stated what they had done, and gave the terms in which they had expressed the contract in the policy. Argument to show that those words did not authorize the insured to go to a second port for a return cargo is unnecessary, as that proposition is fully established by the opinion given in the suit at law, to which reference is made to support that conclusion. Complainant alleges that at the time of

issuing the policy, there existed a general and uniform usage at the port of Liverpool, that all vessels chartered at that port for a round voyage from that port to the island of Cuba, and thence to return to Europe, carrying coal as their outward cargo to Cuba, and bringing a return cargo thence to Europe, should visit two ports in said island, that is, one for the purpose of discharging the outward cargo and a second for the purpose of shipping a return cargo, and he avers that, in applying for insurance in this case, it was his intention to obtain insurance upon the charter of the barque for such a voyage as is usually performed by vessels chartered at Liverpool for such a round voyage, carrying coal for an outward cargo, and that the respondents were fully informed that such was his purpose, and of the nature of the voyage, and that they agreed to insure the charter for such a voyage. On the other hand, the respondents, in their answer, deny the existence of any such usage, and allege that they did insure $5,000 on the charter of said barque from Liverpool to port in Cuba, and thence to port of advice and discharge in Europe, at a premium of four per cent, and so informed the complainant by letter. They also state that they replied to the letter of the complainant, stating in positive, clear, and unambiguous language precisely for what voyage the respondents agreed to insure the charter of the barque, and that thereafter, in their due and regular course of business, made out a policy of insurance and delivered the same to the complainant, in exact accordance with the statement in their letter to him, and exactly in tenor and effect in accordance with what they had agreed to do.

None of those statements of the answer can be denied if the language of the correspondence between the parties be taken in its ordinary signification; but the complainant contends that his letter, if interpreted as the underwriters were bound to interpret it, asked for a policy permitting the use of two ports in Cuba; but the answer to that proposition is, that the language of the policy is the same as the language of the complainant's letter, and the court decided, in the suit at law, that evidence of usage was not admissible to affix such a meaning to that language, and the court adheres to that opinion. Hearn v. New England Mut. Marine Ins. Co. [Case No. 6,301]; Hearn v. Equitable Safety Ins. Co. [Id. 6,299]. Viewed in any light, the court is of the opinion that the complainant fails to show that the respondents agreed to give him any other policy than the one which they executed and delivered to him, and, in respect to that, the court has already decided that it does not give him any such right. Bill of complaint dismissed.

[NOTE. Cases Nos. 6,299 and 6,300 were actions by the same plaintiff against another company, and involved the same points as in this case and Case No. 6,301.

[From the decree in this case dismissing the bill the complainant appealed to the supreme court, where, in an opinion by Mr. Justice Swayne, the decree was affirmed. 20 Wall. (87 U. S.) 488. It was held there was no misapprehension on either side as to the terms of the contract. Only where the minds of the parties have not met is there no contract. "Usage is admissible to explain an ambiguity, but it is never received to contradict what is plain in a written contract." In a case of deviation the law annuls the contract as to the future, and forfeits the premium to the underwriter.]